UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAMIL HERNANDEZ-MEJIAS,

Petitioner,

v.

KRISTI NOEM, Secretary of the
Department of Homeland Security, et al.,

Respondents.

Case No.: 25cv3615-LL-DDL

**ORDER GRANTING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

(ECF No. 5)

Before the Court is Petitioner Samil Hernandez-Mejias' First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 5 ("Pet."). Also before the Court is Respondents Kristi Noem (Secretary of the U.S. Department of Homeland Security), Pamela Bondi (Attorney General of the United States), Todd Lyons (Acting Director of Immigration Customs Enforcement), Jesus Rocha (Acting Field Director, San Diego Field Office), and Christopher LaRose's (Senior Warden of Otay Mesa Detention Center) (collectively, "Respondents") Return in Opposition to the Habeas Petition [ECF No. 6 ("Ret.")], and Petitioner's Traverse [ECF No. 7 "Traverse"]. For the reasons set forth below, the Court **GRANTS** Petitioner's First Amended Petition for Writ of Habeas Corpus.

/ / /

1

25cv3615-LL-DDL

## I.    BACKGROUND

Petitioner, a citizen and national of Cuba, alleges that he has been detained by the United States Department of Homeland Security's Immigration and Customs Enforcement ("ICE") on September 16, 2025. Pet. at 3. Petitioner entered the United States in July 2019 and applied for asylum. Pet. at 3; Ret. at 2. In February 2020, Petitioner's application for asylum was denied. Pet. at 3; Ret. at 2. Petitioner filed an appeal to the Board of Immigration Appeals ("BIA"), which was denied on November 12, 2020. Pet. at 3; Ret. at 2. Petitioner remained in ICE custody from July 2019 to August 2020 when ICE released him on Order of Supervision. Pet. at 3; Ret. at 2. Since his release in 2020, Petitioner attended all his ICE check-ins and sustained no criminal convictions, not even a traffic ticket. Pet. at 3.

On September 16, 2025, ICE re-detained Petitioner. Pet. at 3; Ret. at 2. Petitioner claims that ICE did not give Petitioner any written or oral explanation as to why he was being re-detained. Pet. at 3. Respondents claim that Petitioner was served a Form I-200, Warrant for Arrest of Alien [Ret., Ex. 6] and Form I-205, Warrant of Removal/Deportation [*id*., Ex. 7]. Respondents, however, admit that ICE did not serve Petitioner a formal notice of revocation of release or conduct an informal interview. Ret. at 3.

On November 19, 2025, ICE was notified that Cuba declined to accept Petitioner for repatriation. Ret., Declaration of Hugo Lara Ramirez ("Ramirez Decl.") ¶ 11. ICE received Mexico's approval to accept Petitioner for third-country resettlement, but Petitioner refused the offer. *Id*. at ¶¶ 13, 15. ICE did not force Petitioner to go to Mexico. *Id*. at ¶ 15. ICE is still in the process of identifying another third country that will accept Petitioner for removal. *Id*. at ¶ 16.

Petitioner now argues that ICE did not comply with applicable regulations when it re-detained him in September 2025 and thus his detention is unlawful.

/ / /

/ / /

/ / /

2

## II.    DISCUSSION

Petitioner brings two claims to argue that he should be released from detention: (1) ICE failed to comply with its own procedures to re-detain him, in violation of the Fifth Amendment Due Process Clause of the U.S. Constitution; and (2) Respondents are detaining him without a significant likelihood of removing him to Cuba, in violation of *Zadvydas*, 533 U.S. at 678. Pet. at 8–15. Petitioner also argues that ICE may not remove him to a third country without providing him with adequate notice and an opportunity to be heard. *Id*. at 15-19. The Court finds that Petitioner's first claim is meritorious and justifies Petitioner's release; therefore, the Court will only address this claim in this Order.

### A. Jurisdiction

As a threshold matter, the Court finds that it has jurisdiction to hear the underlying Petition.

#### a.  Habeas Corpus

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 36 L.Ed.2d 439 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to

consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order.").

### b. 8 U.S.C. § 1252(g)

Respondents argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(g). Ret. at 3-4. The Court disagrees. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." 8 U.S.C. § 1252(g). Respondents argue that Petitioner's claims "arise 'from the decision or action by the Attorney General to . . . execute removal orders,' over which Congress has explicitly foreclosed district court jurisdiction." Ret. at 4. However, the Supreme Court has narrowly interpreted § 1252(g) as applying "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (noting that courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.").

In fact, the Supreme Court has previously rejected as "implausible" Respondents' suggestion that § 1252(g) covers "all claims arising from deportation proceedings" or imposes "a general jurisdictional limitation." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020) (citing *Reno.*, 525 U.S. at482. In other words, Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez*, 154 F.4th at 997.

Here, Petitioner is not challenging the legitimacy of his removal order or ICE's discretionary authority to decide "when" or "whether" to execute such removal order. *See*

*Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (quoting *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020). Unlike the petitioner in *Rauda*, Petitioner is not seeking to enjoin Respondents from removing him, or in other words, enjoin "action by the Attorney General to . . . execute removal orders against [Petitioner]." Rather, Petitioner challenges his present detention as unlawful as well as Respondents' authority to re-detain him without notice and an opportunity to respond. Accordingly, this Court has jurisdiction to consider Petitioner's claims.

**B. Due Process**

Petitioner challenges his detention as unlawful because ICE failed to provide the required notice and opportunity to be heard before re-detaining him. The Court agrees.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The detention and release of noncitizens that are subject to a final order of removal are governed by 8 U.S.C. § 1231. This statute provides that "when [a noncitizen]is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). It also authorizes detention of the noncitizen during this removal period. *Id*. § 1231(a)(2). However, once that time passes and "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released on supervised release. *Zadvydas*, 533 U.S. at 699–700; *see* 28 U.S.C. § 1231(a)(3) ("If the [noncitizen] does not leave or is not removed within the 90-day removal period, the [noncitizen], pending

25cv3615-LL-DDL

removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Once ICE releases a noncitizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted). Supervised release and any revocation of such release thereafter is governed by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13.[1] *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025). If ICE chooses to re-detain, the noncitizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."[2] 8 C.F.R. § 241.13(i)(3). Thereafter, the noncitizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).

Here, Petitioner was in ICE custody from July 2019 to August 2020, when ICE released him on Order of Supervision. Pet. at 3; Ret. at 2. On September 16, 2025, ICE re-detained Petitioner. *Ibid*. Respondents concede that ICE did not serve Petitioner a formal

---

[1] Respondents do not appear to suggest that Petitioner violated the terms of his supervised release (*see generally* Ret.), ruling out § 241.4(l)(1) or § 241.13(i)(1) as the source of his revocation. Rather they appear to rely on either § 241.4(l)(2) or § 241.13(i)(2).

[2] These requirements for notice and an initial informal interview are not explicitly required in § 241.4(l)(2), but courts have held that the same requirements constrain revocation of release under this provision as well. *See Diaz*, 2025 WL 2581575, at *5 (citing various district court cases that have rejected the government's arguments that these provisions do not apply to § 241.4(l)(2)); *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *6 (S.D. Cal. Oct. 10, 2025) ("District courts have consistently…held that § 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2).").

25cv3615-LL-DDL

notice of revocation of release when ICE re-detained Petitioner but claim that Petitioner was served two warrants. Ret. at 3. These warrants did not provide any reasoning as to the revocation of supervised release. *See* Ret., Exs. 6, 7. Courts have found documents with more level of details than these warrants to be insufficient to provide notice under the statute. *See Sargsyan v. Noem*, No. 25-CV-3857 JLS (JLB), 2026 WL 92044, at *3 (S.D. Cal. Jan. 13, 2026) (finding a generic form revocation letter insufficient to provide notice); *Xayakesone v. Noem*, No. 25-CV-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official [noncitizen] file and a determination that there are changed circumstances in your case"); *Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the [noncitizen's] release"); *Nouri*, 2025 U.S. Dist. LEXIS 171809 at *11 ("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the notification' when the [n]otice does not actually state any reasons for revocation.") Thus, the Court finds that the warrants are insufficient and do not provide Petitioner with adequate reasons for the revocation of his release.

Further, Respondents concede that ICE did not conduct an initial informal interview [Ret. at 3], thus failing to provide him "an opportunity to respond to the reasons for revocation stated in the notification," 8 C.F.R. § 241.13(i)(3). As other courts have found, ICE's failure to provide an informal interview after the revocation of release constitutes a due process violation. *See Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *6 (S.D. Cal. Oct. 10, 2025) (due process violation where "[n]othing in the record indicates that Petitioner was provided with an interview in connection with the revocation of his release or otherwise afforded an opportunity to respond to the reasons for his re-detention."); *Ceesay*, 781 F. Supp. 3d at 164 ("ICE's failure to afford [petitioner] an interview violated his right to due process"); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (holding that informal interview

25cv3615-LL-DDL

was not sufficiently "prompt" where it took place twenty-seven days after revocation and collecting cases).

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)). "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).

In sum, the Court finds that because ICE did not follow its own regulations in deciding to re-detain Petitioner, these failures constitute a violation of Petitioner's due process rights and justifies his release from unlawful detention. *See, e.g.*, *Tran*, 2025 WL 3005347, at *3-4 (granting a habeas petition where ICE failed to follow § 241.13(i)(3) procedures); *Xayakesone*, 2025 WL 3229102, at *4-5 (same); *Truong*, 2025 WL 2988357, at *5-6 (same).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's First Amended Petition for Writ of Habeas Corpus [ECF No. 5], and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting Order of Supervision. The Court **ORDERS** that Respondents cannot re-detain Petitioner without following the procedures set out in 8 C.F.R. § 241.4, 8 C.F.R. § 241.13, and other implementing regulations. The Parties are **ORDERED** to file a Joint Status Report by **January 20, 2026**, at **5:00 p.m.** confirming that Petitioner has been released.

**IT IS SO ORDERED.**

Dated:  January 16, 2026

_____
Honorable Linda Lopez
United States District Judge

8

25cv3615-LL-DDL